IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE RICHARDS GROUP, INC., §
§
§
                 Plaintiff, §
                           § Civil Action No. 3:06-CV-0799-D
VS.                        §
                           §
JEFFREY S. BROCK, et al.,  §
                           §
                 Defendants. §

MEMORANDUM OPINION
AND ORDER

       In this removed action, defendants move to dismiss for lack of
personal jurisdiction.  The court must decide whether plaintiff has
made a prima facie showing that the contacts of a nonparty
corporation can be attributed to the two nonresident defendants
under an alter ego or single business enterprise theory.
Concluding that it has, and that the exercise of personal
jurisdiction over the defendants would not offend traditional
notions of fair play and substantial justice, the court denies the
motion to dismiss.

I

       Plaintiff The Richards Group, Inc. ("TRG") sued defendants
Jeffrey S. Brock ("Brock") and Brock Music Productions, Inc.
("BMPI") in county court seeking a declaratory judgment.  The
events giving rise to this litigation began in September 2003, when
TRG hired Brock and Brock Music, Inc. ("Brock Music") to provide
original music to be used in a Travelocity advertising campaign
that TRG was creating.  The parties entered into the customary

Music Rights Agreement and Music Services/Recording Purchases
Agreement ("Agreement"), which Brock, as President of Brock Music,
signed.  Brock Music provided TRG a musical composition pursuant to
the Agreement.  But unknown to TRG, the composition infringed on a
copyright owned by EMI Catalogue Partnership ("EMI").
Consequently, it was necessary for TRG to defend a copyright
infringement action that EMI filed against it.  The lawsuit was
ultimately settled.

TRG then sought to recover against Brock Music in binding
arbitration on theories of breach of contract and fraud.  After it
prevailed on its breach of contract claim, it brought suit in
county court in Texas to enforce the award.  Brock Music did not
contest the suit.  On February 17, 2006, however, shortly before
TRG obtained on February 28, 2006 a final judgment ("Judgment")
enforcing the arbitration against award Brock Music, Brock
incorporated BMPI.  TRG alleges that it has been unable to collect
the Judgment, and that Brock Music's counsel informed TRG that
Brock Music had no assets from which to collect a judgment.

TRG filed the instant suit in county court against Brock and
BMPI alleging that Brock is the alter ego of Brock Music and
therefore is liable to TRG for the Judgment.  TRG also seeks a
declaratory judgment that Brock is jointly and severally liable for
the Judgment because he used Brock Music as a sham to perpetrate
fraud on TRG.  TRG requests that the court declare the transfer of

- 2 -

assets from Brock Music to BMPI void as a fraudulent transfer, declare that BMPI is subject to a lien, and order that the lien be foreclosed against the property and the property sold to satisfy the Judgment.

Brock and BMPI removed the case to this court, and they move under Fed. R. Civ. P. 12(b)(2) to dismiss TRG's claims against them for lack of personal jurisdiction.[1] Brock is a Tennessee citizen and resident who has neither lived in Texas nor owned property here for over 30 years. As noted, BMPI is a new corporation, incorporated in Tennessee on February 17, 2006. Its principal place of business is located in Tennessee, and it has never had an office, owned property, or had any employees or agents in Texas. Brock and BMPI maintain that this court has neither general nor specific jurisdiction over them.

II

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The determination whether a federal

---

[1]Defendants filed their motion on May 10, 2006. The court later granted the parties' agreed motion to continue consideration of the motion so that TRG could conduct discovery necessary for it to respond. Briefing on the motion concluded on January 29, 2007, when defendants filed their reply brief.

district court has personal jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See, e.g., Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over Brock and BMPI would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.; Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted). To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and

- 4 -

effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Berry v. Lee*, 428 F.Supp.2d 546, 557 (N.D. Tex. 2006) (Fitzwater, J.) (citations omitted).

A defendant's contacts with the forum may support either specific or general jurisdiction. *Mink*, 190 F.3d at 336. "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler,* 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Mink*, 190 F.3d at 336 (citations omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted).   "This liberal

standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 U.S. Dist. LEXIS 22714, at *7-*8 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

III

TRG argues that the court has personal jurisdiction over Brock Music[2] and, under a variety of veil-piercing theories, such as alter ego, sham, and single business enterprise, it should attribute Brock Music's contacts to Brock and BMPI.  The court first considers whether TRG has made the required showing as to Brock.

A

As a general rule, under the fiduciary shield doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the

---

[2]Defendants do not contest the premise that the court can exercise personal jurisdiction over Brock Music.  In fact, Brock testified in his deposition that, during the last five years, approximately one-half of Brock Music's work was dedicated to TRG. P. App. 157-58.  Defendants instead maintain that Brock Music's contacts cannot be attributed to them.  Accordingly, if TRG establishes a veil-piercing theory as to the defendant in question, the court can exercise personal jurisdiction over that defendant.

corporation[.]" *Optimum Return LLC v. CyberKatz Consulting, Inc.*, 2004 WL 827835, at *3 (N.D. Tex. Mar. 26, 2004) (Fitzwater, J.) (quoting *Stuart*, 772 F.2d at 1197). But "[t]he doctrine does not apply if the corporation is the alter ego of the individual." *Id.* (citing *Stuart*, 772 F.2d at 1197). In determining whether a corporation is the alter ego of an individual, the court is directed to examine the "totality of the circumstances." *Century Hotels v. United States*, 952 F.2d 107, 110 (5th Cir. 1992). The Fifth Circuit has identified a "laundry list" of factors that courts should apply in making an alter ego determination. *See United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691-92 (5th Cir. 1985). While these factors, sometimes referred to as the "*Jon-T* factors," were designed for reviewing a parent-subsidiary relationship, a court may appropriately modify the factors to determine whether a corporation is the alter ego of an individual. *See Century Hotels*, 952 F.2d at 110. In applying them, courts must bear in mind that "the alter ego test for attribution of contacts, i.e., personal jurisdiction, is less stringent than that for liability." *Stuart*, 772 F.2d at 1198 n.12 (internal citations and quotation marks omitted).

B

TRG argues that Brock is the alter ego of Brock Music, and that Brock Music's actions should therefore be attributed to Brock for purposes of personal jurisdiction. It alleges in its

- 7 -

complaint[3] that Brock is the sole shareholder, sole director, and President of Brock Music; Brock and Brock Music do not maintain separate offices, but rather Brock Music's office address is actually the location of Brock's personal residence; Brock frequently uses the corporate checking account to pay personal debts and does not regularly reimburse the corporation for these expenditures; Brock owns the capital equipment that Brock Music uses in its business, and Brock Music has no assets of its own; Brock Music has never issued any stock; Brock represents himself as the owner of Brock Music's business and often enters into contracts in his own name rather than in Brock Music's name; Brock has diverted Brock Music's corporate assets to the detriment of its creditors; Brock Music is grossly undercapitalized; Brock fails to maintain minutes and adequate corporate records for Brock Music; and Brock treats the corporate assets of Brock Music as his own.

In a declaration submitted in support of defendants' motion to dismiss, Brock denies having taken any of the property of Brock Music or in any way having commingled company assets with his own. He also avers that he has not diverted any Brock Music assets away from the company to avoid any debt, including the Judgment. TRG has not produced evidence that rebuts these sworn denials.

Considering only the uncontroverted allegations, the court

---

[3]In this removed action, TRG filed a "petition." For clarity, the court will refer to it as a "complaint."

nevertheless concludes that TRG has established a prima facie case that Brock is the alter ego of Brock Music and that Brock Music's contacts with Texas may be attributed to Brock.  Under Texas law, "'[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.'"  *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)).  The relevant factors to be considered in determining whether the alter ego doctrine applies include:

> the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.

*Id.* (quoting *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 643 (5th Cir. 1991)).  In the present case, the uncontroverted allegations, which the court accepts as true, establish that Brock is the sole shareholder, sole director, and President of Brock Music, and that Brock Music has never issued any stock.  Brock and Brock Music do not maintain separate offices, Brock Music owns no assets of its own, and Brock owns the capital equipment that Brock Music uses.  Brock Music is grossly undercapitalized, and Brock Music has failed to observe corporate formalities.  Even without

considering the controverted allegations that Brock commingled his assets with those of Brock Music or that Brock transferred Brock Music's funds to himself, to the detriment of creditors, the court is still able to conclude that TRG has established a prima facie case that Brock Music is the alter ego of Brock.  Accordingly, for purposes of deciding whether it can exercise personal jurisdiction over Brock, the court attributes the contacts of Brock Music to Brock and therefore concludes that Brock, through Brock Music, has had sufficient minium contacts with the state of Texas for the court to exercise personal jurisdiction.

C

Having concluded that TRG has established Brock's minimum contacts with Texas as the alter ego of Brock Music, the court must decide whether the exercise of personal jurisdiction over Brock would offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211.  When a plaintiff establishes its prima facie case that the defendant has "minimum contacts" with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable.  *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 382 (5th Cir. 2002)).

> In conducting the fairness inquiry, we examine (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.

*Id.* (quoting *Felch*, 92 F.3d at 324).

In his declaration, Brock avers that because his residence and place of business are more than 600 miles from the court, and because most of the witnesses he would call reside in Tennessee, it would be extremely burdensome and expensive for him to litigate this case in Texas.  The court concludes that Brock has failed to demonstrate that he will suffer such a great burden that requiring him to litigate this case in Texas would offend traditional notions of fair play and substantial justice.

> We recognize that there is some burden placed on Adams Inc., a Pennsylvania corporation, as a result of the case being tried in Texas. However those burdens do not present the type of compelling reasons necessary to justify a finding that the exercise of jurisdiction over Adams Inc. is contrary to notions of fair play and substantial justice.

*See Gundle Lining Constr. Corp. v. Adams County Asphalt*, 85 F.3d 201, 207 (5th Cir. 1996).

Furthermore, Brock has already appeared in Texas for the arbitration between TRG and Brock Music, and, for the past several years, he has made regular trips to Texas to develop business, service clients, and see family friends.  Accordingly, the court

- 11 -

holds that Brock has not met his burden of establishing that the exercise of jurisdiction over him would offend traditional notions of fair play and substantial justice.

IV

The court next addresses whether it can exercise personal jurisdiction over BMPI.

A

TRG alleges in its complaint that, when Brock incorporated BMPI, he transferred the assets of Brock Music to BMPI; BMPI has a nearly identical name, the same assets, employees, location, owners, and business of Brock Music; and Brock has redirected business that would have gone to Brock Music to BMPI to hinder, delay, or defraud TRG's collection of the Judgment. It asserts a claim for fraudulent transfer, seeking a declaration that the transfer of assets from Brock Music to BMPI is void and must be set aside, and that BMPI's property is subject to a lien under TRG's Judgment. TRG also seeks an order that the lien be foreclosed against the property and the property sold to satisfy the Judgment.

In the declaration offered in support of defendants' motion to dismiss, Brock states:

> Although there is common ownership, BMPI has no affiliation with Brock Music, which is a company that produces music for advertisements and films. Brock Music is still in operation today and no assets of Brock Music have been transferred to BMPI. Instead, they are two companies that have different business models and cater to different clientele.

- 12 -

D. App. 2.  Defendants argue that TRG's allegation that Brock transferred assets from Brock Music to BMPI is conclusory, and that TRG cannot identify a single asset transferred from Brock Music to BMPI.

TRG responds that BPMI uses Brock Music's telephone number but pays no telephone bills; BMPI has never had any clients, has none of its own recording equipment, and says it has never used the recording equipment at the recording studio.  TRG argues that Brock Music and BMPI are essentially the same business, pointing to Brock's statement that BMPI is a company for which he writes as a composer of film musical scores and as a producer or writer for records, and Brock's sworn declaration that Brock Music produces music for advertisements and films.  Finally, TRG alleges that Brock uses the same email address for all of his personal and business matters.  It also argues that Brock transferred assets from Brock Music to BMPI.  TRG maintains that beginning in March 2006, Brock began paying himself and the recording engineer from BMPI.  To form BMPI and pay for his and his engineer's salaries, Brock "loaned" BMPI approximately $30,000 that he had received from various projects, including scoring the music for the film "No Regrets."  This loan was interest free, with no fixed terms.  TRG also points out that Brock Music owns the recording equipment at the studio and paid the salary of the recording engineer and Brock through February 2006.  Brock Music has also paid all the property

- 13 -

taxes on the recording studio from 1989 through 2005.  TRG argues that because the film "No Regrets" was released in 2004, it is reasonable to infer that Brock Music owned the $30,000 that Brock received from scoring "No Regrets," but he nonetheless deposited the proceeds into a personal account that he then "loaned" to BMPI, which in turn paid him and the recording engineer's salaries beginning in March 2006.

Defendants admit in their reply that BMPI has common ownership with Brock Music and that it rented the same office space as did Brock Music.  They argue, however, that it is undisputed that no assets have been transferred from Brock Music to BMPI, BMPI is not the successor to Brock Music, and the entities are unrelated. Defendants maintain that because BMPI is not doing any business, has no clients, and has not used any music equipment, TRG's assertion that BMPI is using Brock Music's equipment is false. They contend that BMPI does owe rent, but that it has not been paid because it has no funds.  Finally, defendants argue that BMPI is not engaged in a common business with Brock Music, BMPI seeks different clients, does not share a website or advertising, does not share employees, and has never been identified with Brock Music in any way.

B

TRG maintains that the personal jurisdiction this court has over Brock Music can be attributed to BMPI by piercing the

- 14 -

corporate veil of Brock Music.  Although it is not entirely clear which veil-piercing theory TRG seeks to apply to BMPI, it appears that TRG is at least relying on the single business enterprise theory, and the court will analyze the record on that basis.

"The jurisprudence that informs the court's determination of whether the single business enterprise theory or alter ego liability is applicable contains similar factors." *Berry*, 428 F.Supp.2d at 554.  In determining the application of the alter ego or single business enterprise theory, courts have outlined non-exhaustive lists of factors that differentiate corporations and that indicate commonality.  *See generally Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1162-63 (5th Cir. 1983) (addressing alter ego factors); *El Puerto De Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V*, 82 S.W.3d 622, 637 (Tex. App. 2002, pet. dism'd w.o.j.) (addressing single business enterprise factors in context of challenge to personal jurisdiction).

> Factors indicating that the corporations are distinct entities include the following: daily operations of the corporations are separate; formal barriers are erected between management of the companies; those with whom the corporations come in contact are apprised of their separate identity; there are separate books and accounts; and there are separate tax returns.

*Berry*, 428 F.Supp.2d at 554.

- 15 -

> Conversely, factors weighing in favor of
> fusing the corporations and/or individuals
> include the following: common business names,
> business departments, offices, directors or
> officers, employees, stock ownership,
> financing, accounting, and payment of wages by
> one corporation to another corporation's
> employees and the rendering of services by
> employees of one corporation on behalf of
> another corporation.

*Id.* "No single factor is determinative, and the ultimate question
is one of control." *Id.* (citing *Bridas S.A.P.I.C. v. Gov't of
Turkmenistan,* 345 F.3d 347, 359 (5th Cir. 2003)).

The gravamen of TRG's argument for exercising jurisdiction
over BMPI appears to be that assets belonging to Brock Music were
fraudulently transferred to BMPI for the purpose of avoiding Brock
Music's liability to TRG, and that therefore the veil of Brock
Music should be pierced and Brock Music's Texas contacts attributed
to BMPI. Although BMPI denies TRG's allegation——specifically
averring that no assets of Brock Music have been transferred to
BMPI——the court must resolve factual disputes in favor of TRG.
*Latshaw*, 167 F.3d at 211. TRG's allegations, although not
supported by a sworn affidavit, are supported by evidence in the
record. *See* P. App. 149-150, 195. Thus the court accepts as true
TRG's statement that "No Regrets" was released in 2004. It also
accepts as true TRG's allegation that the approximately $30,000
payment used to start BMPI and pay Brock and BMPI's engineer came
from the proceeds from scoring "No Regrets" and various other
projects. Finally, the court accepts as true the allegation that

- 16 -

Brock deposited the $30,000 that he received for scoring "No Regrets" into a personal account and then "loaned" that sum to BMPI.  Taking these allegations as true for purposes of deciding defendants' motion to dismiss, the court concludes that Brock transferred to BMPI the sum of approximately $30,000 that arguably was Brock Music's property.  The court also accepts as true the uncontested allegations that Brock owns both Brock Music and BMPI; Brock is the President and sole shareholder of both corporations; Brock and BMPI share common office space; and Brock Music and BMPI have substantially similar names and have substantially similar businesses.

TRG's "burden of demonstrating a prima facie case of personal jurisdiction through alter ego and single business enterprise theories is 'less stringent' than the standard [it] must meet at trial of proving alter ego or single business enterprise liability. *Berry*, 428 F.Supp.2d at 556 (citing *Hargrave*, 710 F.2d at 1161). Viewing the evidence as a whole, the court concludes that TRG has made a prima facie showing that Brock Music and BMPI are components of a single business enterprise.  Their business purposes and names are quite similar, and Brock has operated both entities while erecting very little functional barriers to signal a separation between them.  *Id.* at 554.  Consequently, the court holds that BMPI, as a component of a single business enterprise that includes Brock Music, has sufficient minimum contacts with the state of

Texas to support the exercise of personal jurisdiction over it. *See, e.g., id.* at 556; *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 2005 WL 822911, at *4-*9 (W.D. Tex. Apr. 6, 2005) (holding exercise of personal jurisdiction proper where single business enterprise theory and alter ego doctrines applied to individual and corporate foreign defendants).[4]

C

The court next determines whether exercising personal jurisdiction over BMPI would offend traditional notions of fair play and substantial justice.

> [O]nce minimum contacts are established, a defendant must present a compelling case that the presence of some consideration would render jurisdiction unreasonable. In fact, only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state.

*WRR Indus., Inc. v. Prologis*, 2006 WL 247894, at *4 (N.D. Tex. Feb. 2, 2006) (Lindsay, J.) (citations, quotation marks, ellipsis, and some brackets omitted). The court considers the factors outlined above, including "(1) the defendant's burden; (2) the forum state's

---

[4]The court recognizes that in "the more typical . . . single business enterprise entity scenario . . . the issue is whether a parent corporation has exceeded the normal exercise of control inherent in ownership of the stock of the subsidiary." *Berry*, 428 F.Supp.2d at 554. But it has concluded that it can exercise personal jurisdiction under the single business enterprise theory even in a case that does not "fit neatly within . . . single business enterprise case law." *Id.*

interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Berry*, 428 F.Supp.2d at 557 (citations omitted).

BMPI contends that it is unreasonable and unjust to require it to defend this suit in this district. It maintains that it is a small company with one employee and limited finances, which it is using to develop its business. Because BMPI's offices are more than 600 miles from this court, and because most of its witnesses reside in Tennessee, BMPI argues that it would be extremely burdensome to litigate this dispute in Texas. As discussed above, the added cost of litigating a suit outside the defendant's home state alone is insufficient to convince the court that it would violate due process to exercise jurisdiction over BMPI. *See Gundle Lining Constr. Corp*, 85 F.3d at 207. Moreover, Brock, who is the owner and President of BMPI, has traveled to Texas in the past for the arbitration and other business endeavors. His assertion that it would be a burden to travel to Texas for this litigation is unconvincing. BMPI has provided the court with no other evidence or argument to support a finding that exercising personal jurisdiction over BMPI would offend traditional notions of fair play and substantial justice. The court therefore concludes that it can exercise personal jurisdiction over BMPI.

- 19 -

\*       \*       \*

For the reasons stated, the court denies defendants' May 10, 2006 motion to dismiss for lack of personal jurisdiction.

**SO ORDERED.**

March 7, 2007.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE