IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE RICHARDS GROUP, INC., §
§
Plaintiff, §
§ Civil Action No. 3:06-CV-0799-D
VS. §
§
JEFFREY S. BROCK, et al., §
§
Defendants. §

MEMORANDUM OPINION
AND ORDER

Plaintiff The Richards Group, Inc. ("TRG") moves for leave to amend its original petition ("complaint")[1] under Fed. R. Civ. P. 16(b)(4) and 15(a)(2). Concluding that TRG has good cause to amend its complaint after the deadline established by the scheduling order, the court grants TRG's motion.

I

The court entered a scheduling order that set April 13, 2007 as the deadline for a party to file a motion for leave to amend the pleadings.[2] Thus TRG's motion to amend its complaint—which was filed after the April 13, 2007 deadline—implicitly requests that the court amend the scheduling order.

When the deadline to amend pleadings has expired, a court

---

[1]This is a removed case, and TRG's state court pleading is entitled an "original petition," in accordance with Texas procedure.

[2]The court has already recounted the background facts of this case in a previous opinion. *See The Richards Group, Inc. v. Brock*, 2007 WL 700896, at *1 (N.D. Tex. Mar. 7, 2007) (Fitzwater, J.).

considering a motion to amend must first determine whether to modify the scheduling order under the Rule 16(b)(4) good cause standard. *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.). If the movant satisfies the requirements of Rule 16(b)(4), the court must next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields*, 1998 WL 874825, at *1.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted).

II

TRG's proposed first amended complaint differs from its complaint in three material ways. First, the proposed amended complaint enhances the factual allegations supporting TRG's original claim that defendant Jeffrey S. Brock ("Brock") is the alter ego of Brock Music, Inc. ("Brock Music"). Second, whereas

TRG's complaint alleges that Brock is the alter ego of Brock Music, the proposed amended complaint requests that the court declare both Brock and defendant Brock Music Productions, Inc. ("BMPI") to be the alter egos of Brock Music and that all three are a single business enterprise.[3]  Third, TRG requests for the first time that the court set aside a $200,000 UCC lien on Brock Music's personal property in favor of Brock as a fraudulent transfer.

A

TRG justifies the untimely amendments to its complaint on the basis of newly-acquired evidence obtained during discovery.  Within one week of defendants' removal of this case from state court, they moved on May 10, 2006 to dismiss for lack of personal jurisdiction. The court permitted TRG to conduct jurisdictional discovery before responding to defendants' motion, and the court did not file its memorandum opinion and order denying defendants' motion until March 7, 2007.  TRG points out that it could not begin merits-related discovery until that day, which was only one month before the scheduling order deadline for filing motions for leave to amend the pleadings.  Moreover, TRG did not obtain any merits-related discovery until September 2007, and only after a magistrate judge granted TRG's Rule 37 motion to compel defendants to supplement

---

[3]TRG's complaint averred only that BMPI was the successor in interest to Brock Music.

their discovery responses.[4]  On December 10, 2007 the magistrate judge granted in part TRG's motion for Rule 37 sanctions against defendants' counsel and ordered that TRG be permitted to depose Brock, his wife, and one of Brock's associates in Nashville, Tennessee.  TRG contends that it did not have all the information on which its motion for leave to amend is based until after these depositions were taken, which took place soon after the magistrate judge's December 10, 2007 order.  TRG filed the instant motion for leave to amend on February 7, 2008.

Defendants highlight that Brock filed in December 2005 the UCC financing statement that TRG is now attempting to set aside.[5]  They maintain that TRG had constructive knowledge of the financing statement since the time it was filed in December 2005; thus TRG has no valid excuse for waiting until February 2008 to add a claim to set aside the UCC lien.  Moreover, defendants point out that TRG had actual knowledge of the UCC lien in September 2007, when defendants finally produced an adequate discovery response. Although the doctrine of constructive knowledge on the basis of public filings may determine lien priority, defendants do not cite any authority supporting the doctrine's application in the federal discovery process.  The court will not charge TRG with knowledge of

---

[4]TRG filed the motion to compel in early July 2007.

[5]TRG avers in its proposed first amended complaint that the financing statement was filed in February 2006.

Brock's UCC financing statement filed in Tennessee, before TRG actually received it in September 2007, on the mere basis that TRG, a Texas corporation with its principal place of business in Texas, could have discovered the UCC financing statement by conducting a search of the lien records in Tennessee. Moreover, although TRG had actual knowledge of the UCC lien in September 2007, it was unable to question Brock about it until December 2007, when TRG was finally able to depose him. Although TRG might have been able to move for leave to amend in December 2007, it filed the instant motion within a reasonable time after obtaining the discovery that supports the proposed amendments. Furthermore, even had TRG moved to amend in December 2007, or even in September 2007 (when it first learned of the UCC lien), its motion would still have been beyond the deadline established by the scheduling order. As to the other proposed changes to the complaint—supplementing TRG's original alter ego claim and adding a new alter ego claim—defendants do not specifically contest TRG's assertion that the facts on which these proposed changes are based were not available until late 2007. Thus the first factor counsels in favor of granting TRG's motion.

B

The court concludes that, except for enhancing the factual allegations that support TRG's original alter ego claim, TRG's proposed changes to the complaint are important to its case. If TRG fails on its original alter ego claim—that Brock is the alter

ego of Brock Music—TRG can still prevail on its additional alter ego claim—that BMPI is the alter ego of Brock Music—and thus collect on its arbitration award against Brock Music from BMPI. Because this additional claim directly affects TRG's prospects of ultimate recovery, it is an important amendment. Likewise, even if TRG fails on all of its alter ego claims, it might be able to recover part of its arbitration award from Brock Music by setting aside Brock's $200,000 lien. Thus TRG's new fraudulent transfer claim is also an important amendment.

C

The third and fourth factors both support granting TRG's motion for leave to amend. When defendants filed their response brief on March 3, 2008, the trial was still set for the two-week docket of March 3, 2008. A few days later, the court reset the trial date for the two-week docket of June 2, 2008. Thus the potential prejudice to defendants of having to defend themselves against new claims on the eve of trial has been removed. Defendants contend that TRG's new fraudulent transfer claim to set aside Brock's UCC lien on Brock Music's personal property requires them to conduct additional discovery. Most of the information related to a UCC lien that Brock filed against a company he owns in whole should be known to Brock or in his possession. But if defendants still maintain that additional discovery is needed, the court can continue the trial date again, provided they make the

required showing. Thus granting TRG's motion for leave to amend will not prejudice defendants.[6]

                                D

Considering the factors *in toto*, the court concludes that there is good cause to permit TRG to amend its complaint after the deadline established by the scheduling order. The court also discerns no compelling reason to deny granting leave under the more liberal Rule 15(a)(2) standard.

                            *   *   *

Accordingly, the court grants plaintiff's February 7, 2008 motion for leave to amend. TRG must file the first amended complaint—electronically or on paper—within five business days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

April 14, 2008.

                                    _____
                                    SIDNEY A. FITZWATER
                                    CHIEF JUDGE

---

[6]Moreover, defendants have yet to file a responsive pleading to TRG's complaint. This omission alone might be enough to prevent defendants from claiming prejudice.