IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE RICHARDS GROUP, INC. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | NO. 3:06-CV-0799-D |
| | § | ECF |
| JEFFREY S. BROCK, and | § | |
| BROCK MUSIC PRODUCTIONS, INC. | § | |
| | § | |
| Defendants | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, The Richards Group, Inc., ("TRG") and files Plaintiff's First Amended Complaint against Defendants Jeffrey S. Brock ("Brock") and Brock Music Productions, Inc. ("BMPI") would respectfully show this Court as follows:

## I.
## PRELIMINARY STATEMENT

Defendant Brock, and the companies he controls, Defendants BMPI and Brock Music, Inc. ("BMI"), are engaged in a corporate shell game to defraud TRG. Defendants owe TRG over $200,000.00 as a result of a judgment TRG obtained against BMI in a contested arbitration in December 2005. Shortly after obtaining the arbitration award against BMI, TRG filed a lawsuit to enforce the award. Without TRG's knowledge, and only weeks before TRG obtained a final judgment against BMI, Brock created a new company, BMPI, which in all respects is identical to BMI and usurped its operations. Brock also encumbered BMI's remaining assets with liens in favor of himself in the amount of $200,000.00 approximately one week before TRG reduced its arbitration award to a final judgment. Brock took these actions in a clear attempt to hinder, delay and defraud TRG. Through this lawsuit, TRG seeks to disregard the corporate fiction that is BMI and hold Brock and BMPI liable for the judgment.

PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 1

## II.
## PARTIES

1. Plaintiff The Richards Group, Inc. ("TRG") is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 750 North Central Expressway, Suite 1200, Dallas, Texas 75231.

2. Defendant Jeffrey S. Brock is the President, sole shareholder and registered agent for Brock Music. His address is 2937 Berry Hill Drive, Nashville, Tennessee 37204. This suit arises out of and is related to business Brock and his company BMI, did in Texas. Brock has already been served and has appeared in this case.

3. Defendant Brock Music Productions, Inc. is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business at 2937 Berry Hill Road, Nashville, Tennessee 37040. BMPI is the successor to BMI, and engaged in business in Texas. This suit arises out of and is related to the business Brock and BMI did with TRG in Texas, and concerns BMPI's role in helping Brock and BMI evade their obligations to TRG. BMPI has already been served and has appeared in this case.

## III.
## JURISDICTION AND VENUE

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff on one hand, and all Defendants on the other hand, and because the amount in controversy exceeds $75,000.00.

5. Venue is proper with this Court pursuant to 28 U.S.C. § 1441(c) because this District and Division embrace the place where the removed action was pending.

## IV.
## FACTS PERTAINING TO ALL CLAIMS

A. **The Players.**

6. TRG is a venerable Dallas institution, and is one of the premier, full-service advertising agencies in the United States. TRG has created award-winning, nationally-recognized advertising campaigns including Chick Fil A's "Eat More Chicken," Motel 6's "Tom Bodette," and the billboards for Dallas Children's Hospital that are seen throughout the Metroplex.

7. Brock is the President, Chairman and sole-shareholder of both BMI and BMPI. BMI was,[1] and BMPI is, a corporation organized and existing under the laws of the State of Tennessee. The principal place of business for both BMI and BMPI is 2937 Berryhill Drive, Nashville, Tennessee, 37204 ("Recording Studio"). Brock and his wife, Joan, own the property on which the Recording Studio is located.

8. Brock first incorporated a company called Brock Musical Productions, Inc. in 1979 for the production of "jingles, songs, advertisements and other musical compositions." Brock changed the name of Brock Musical Productions, Inc. to "JS Brock Musik, Inc." in 1983. In 1985, however, the corporate charter for JS Brock Musik, Inc. was revoked and the company reverted to a sole-proprietorship. Brock operated JS Brock Music as a sole proprietorship between 1985 and 1989. In 1989, "JS Brock Musik, Inc." was reinstated as a corporation and Brock changed the company's name to "Brock Music, Inc."

9. Brock began looking for business opportunities in Dallas in the early 1990's on behalf of BMI. In approximately 1994, Brock and BMI first began working with TRG. Through BMI, Brock worked on dozens of projects for TRG. Indeed, in the last five years preceding the arbitration,

---

[1] BMI was administratively dissolved by the State of Tennessee on or about August 21, 2006.

half of BMI's business comprised of work for TRG. For each project, Brock entered into a separate, written contract with TRG.

### B. Brock "Creates" A Composition And Indemnifies TRG.

10. The lawsuit that led to this case involves one such project. On or about September 8, 2003, TRG hired "Jeffrey Brock and Brock Music, Inc." to provide original music to be used in a Travelocity advertising campaign that TRG was creating. As was their practice, Brock and BMI entered into a written contract with TRG called a Music Services/Recording Purchase Agreement with an accompanying Music Rights Agreement (the "Contract"). In accordance with the Contract, and as he had done before, Brock represented and warranted to TRG that he would provide a piece of original music that did not and would not infringe upon or violate the copyrights or any other rights whatsoever of any person or entity (the "Composition"). Moreover, Brock and BMI agreed to indemnify and defend TRG against any claims of infringement brought by a third-party relating to the Composition.

11. In accordance with the Contract, Brock "created" the Composition. TRG reasonably relied on the representations and warranties made by Brock and paid BMI $58,000.00 for the Composition. In addition to the $58,000.00 TRG paid to BMI for the Composition, Brock personally retained half of the publishing rights to the Composition.

12. Shortly after receiving the Composition, TRG finalized the Travelocity spots and the campaign went public. Between September 29th and October 13th, 2003, the Travelocity spots containing the Composition aired nationwide on radio and television approximately 1500 times.

### C. Brock's Representations Were False And TRG Was Forced To Litigate.

13. On November 3, 2003, however, Travelocity received a cease-and-desist letter from EMI Catalogue Partnership ("EMI"), the registered copyright owner of Elmer Bernstein's *The Great*

*Escape March* from the 1963 movie "The Great Escape." Then, EMI sued TRG and Travelocity for copyright infringement for using the Composition and sought damages in excess of $500,000.00 (the "Copyright Case"). Pursuant to the representations and warranties made by Brock, as well as Brock's agreement to indemnify TRG for any claims arising from use of the Composition, TRG put BMI on notice of the Copyright Case and requested that BMI defend TRG and Travelocity. BMI refused to do so. As a result, TRG was forced to defend Brock's work and incurred attorney's fees and costs of approximately $30,000.00. TRG then paid EMI $150,000.00 to settle the Copyright Case. Pursuant to the Contract, TRG demanded reimbursement from BMI. BMI refused to pay.

14. As a result, TRG initiated an arbitration against BMI. On December 13, 2005, after a contested arbitration proceeding, the arbitrator awarded TRG $180,000.00 (plus pre-judgment interest), an additional $25,000.00 for TRG's attorney's fees related to the arbitration, $2,988.72 as reimbursement for TRG's arbitration fees and expenses, and post-judgment interest on all of the above amounts at 5% per year. The arbitration award also required that BMI stop using the Composition for any purposes. Ignoring the arbitrator's ruling, BMI refused to satisfy the arbitration award and Brock continues to use the Composition on his company's website to this date.

15. On December 28, 2005, TRG filed an action in Dallas County Court at Law No. 1 against BMI to enforce the Arbitration Award ("Suit to Enforce"). Although Brock was aware of the Suit to Enforce the Arbitration Award, he made a business decision not to participate based on his attorney's advice. On February 28, 2006, the Court granted a Final Judgment in the amount of $220,831.40 in favor of TRG against BMI, which is accruing interest.

D. **Brock Attempts To Defraud TRG Through A Corporate Shell Game.**

16. At the time the Arbitrator made his award, none of BMI's assets were encumbered. On February 10, 2006, however, Brock encumbered BMI's assets in favor of himself in the amount

of $200,000.00 when he filed a UCC Financing Statement with the State of Tennessee. Brock knew at the time he filed the Financing Statement that TRG was seeking to enforce the Arbitration Award and that a judgment was looming against BMI in approximately the same amount being encumbered. Brock admittedly encumbered BMI's assets to thwart TRG's efforts to satisfy the Arbitration Award.

17. Only one week later, on February 17, 2006 – and only a week before TRG obtained the Final Judgment – Brock incorporated BMPI. Not only is the name virtually identical to the original name of BMI, BMPI is virtually identical to BMI in every important aspect:

- (a) BMPI's and BMI's principal place of business is the same and they use the same phone number.
- (b) Brock is the President, Chairman, and sole shareholder of BMPI (as he was with BMI) and makes all day-to-day operating decisions.
- (c) Brock's wife, Joan, is the only other officer or director of BMPI (as she was with BMI).
- (d) Collin Peterson, the recording engineer at the Recording Studio, was the only employee other than Brock for both companies.
- (e) BMPI received interest-free "loans" from Brock with no fixed payment terms (as did BMI).
- (f) BMPI pays no rent (BMI stopped paying rent in 2004).

18. BMPI was "funded" in large part by "loans" from Brock. These "loans" were made from money belonging to BMI, are not documented, and do not contain any terms associated with real loans, such as an interest rate or a due date. As of today, BMPI has not paid back one cent on these "loans."

19. BMPI uses BMI's phone number, but pays no phone bills. BMPI has never had any clients of its own or its own recording equipment. Yet, BMPI called on BMI's clients and contacts for business using BMI's office equipment and customer lists.

20.     The date the Final Judgment was entered, February 28, 2006, was the last time BMI had its own employees and paid Brock and his recording engineer a salary. Brock, however, continued to operate BMI and has continued to maintain BMI's website, which still contains the Travelocity spots he is enjoined from using under the heading "Jeff Brock: Composer's Video Reel," among other references. Effective August 21, 2006, the State of Tennessee administratively dissolved BMI for failing to file its Annual Report.

21.     Beginning March 1, 2006, Brock began using BMPI to pay himself and the recording engineer. To form BMPI and pay for those salaries, Brock "loaned" BMPI approximately $30,000 he had received and deposited into a personal account for scoring the music for a film titled "No Regrets" and from "a couple of smaller projects." The "loan" was interest-free with no fixed terms.

22.     That $30,000.00 clearly belonged to BMI. While Brock has claimed that BMI did not do scores for films, Brock, through BMI (not BMPI) scored "No Regrets." <u>BMI</u>, not BMPI, sent the invoice for the score to Transcendent, the production company for whom Brock scored "No Regrets." Transcendent, in turn, paid <u>BMI</u>, not BMPI, for the score.

23.     For Brock to score the music for "No Regrets" (which was released in 2004) and the other projects, he needed to use BMI's recording equipment, as BMI owns all the recording equipment at the studio. BMI also paid the salary of the recording engineer (and Brock) through February 2006. BMI also paid all the property taxes on the studio from 1989 through 2005. In other words, Brock did not "loan" BMPI this money, he transferred it to BMPI to evade TRG.

24.     Before Brock "loaned" BMPI the $30,000, BMI's bank accounts were swept and emptied by the State of Tennessee to pay for back taxes. Upon information and belief, the $30,000 Brock received for scoring "No Regrets" was owed to BMI, but Brock deposited it into a personal account, and then "loaned" it to BMPI. BMPI in turn, paid Brock and the recording engineer's

salaries beginning in March 2006. Brock "loaned" the $30,000.00 to BMPI, rather than BMI, to avoid BMI's creditors, especially TRG.

25.     As of June 30 2006, Brock caused BMPI to pay Brock and the recording engineer all the funds "loaned" to it from Brock. BMPI then became a functionless sham company with no income.

26.     When BMI's business tapered off in mid-2004, Brock began to rent the studio and use of the recording equipment to the general public via another sole proprietorship he calls "Creative Caffeine." Brock describes Creative Caffeine as a "division," or sub-unit, of BMPI, though Brock began operating Creative Caffeine more than two years before BMPI was formed. Brock "rents out" BMI's studio and equipment under the guise of Creative Caffeine. Like the other companies, however, Brock is Creative Caffeine. The property is leased by BMI and the equipment in the studio is BMI's. The very files used for BMI's website are also used by Brock in Creative Caffeine's website. Although BMI owns the recording equipment, leased the studio from Brock, paid Brock's property taxes on the studio, paid the salary of the recording engineer, and paid for all the overhead related to the Recording Studio, Brock has provided no money to BMI from the operation of Creative Caffeine. Instead, it all goes to himself personally in an effort to evade Defendants' creditors, including TRG. To this day, Brock still uses Brock@BrockMusic.com as his "main e-mail address" for all his personal and business matters, including the operations of BMPI and Creative Caffeine.

## V.
## CAUSES OF ACTION

**A.     Count 1: Declaratory Relief.**

27.     TRG re-alleges and incorporates the allegations set forth in the preceding paragraphs.

28.     An actual and justiciable controversy exists between TRG and Defendants.

29.     Brock has used BMI, BMPI, and Creative Caffeine, as mere instrumentalities for his

personal endeavors to mislead and evade creditors, TRG in particular, and to perpetrate a fraud upon them. Brock also encumbered BMI's assets by filing a UCC Financing Statement in an effort to defraud and evade TRG.

30.  There is such unity between Brock, BMI and BMPI that the separateness of the three has ceased and holding only BMI liable would result in injustice. Neither BMI nor BMPI has a separate mind, will or existence of its own, but are merely extensions of Brock. Brock inadequately capitalized BMI and paid its expenses personally, and from personal accounts. Brock has done the same with BMPI. Brock only formed BMPI after TRG obtained the arbitration award against him, and after TRG filed a lawsuit to enforce the award. Brock formed BMPI to evade an impending judgment against BMI. Brock also caused BMI to transfer assets to BMPI for no remuneration or benefit to BMI, in furtherance of his illegal scheme to evade and defraud TRG. Brock does not operate BMI and/or BMPI as separate entities, but integrates their resources to achieve a common business purpose, which makes each constituent corporation and Brock liable for the debts incurred in pursuit of that business purpose. As a result of these actions, TRG has been harmed.

31.  TRG requests that the Court declare that BMI and BMPI are shams, that Brock and BMPI are the alter egos of BMI, and that Brock, BMI, and BMPI, are a single business enterprise and/or one continuing business. As such, TRG requests that the Court find that Brock, BMPI, and BMI, are jointly and severally liable for any judgment obtained in this action, and such further and other relief to which TRG may be justly entitled.

**B.  <u>Count 2: Fraudulent Transfer.</u>**

32.  TRG re-alleges and incorporates the allegations set forth in the preceding paragraphs.

33.  Brock has transferred the assets of BMI to BMPI and himself with the intent to hinder, delay, or defraud his creditors, including TRG, in that Brock made such transfers either while

BMI was insolvent or after TRG won an arbitration award against BMI on December 13, 2005, and after TRG filed a lawsuit to enforce that Award.

34. TRG requests that the Court declare such transfers from BMI to Defendant BMPI void, and set aside and annul the transfers.

35. TRG also requests that the Court declare the lien conveyed in favor of Brock pursuant to the UCC Financing Statement to be null and void, and to set aside the lien in favor of Brock.

36. TRG further requests that the Court declare Brock and BMPI's property is subject to a lien under TRG's Judgment, and an order that the lien be foreclosed against the property and the property sold to satisfy TRG's Judgment.

### C. Count 3: Attorney's Fees and Costs.

37. TRG re-alleges and incorporates the allegations set forth in the preceding paragraphs.

38. As a result of Defendants' conduct, TRG has been required to retain the undersigned attorneys to prepare, file and prosecute this suit. TRG has incurred, and will further incur, costs in connection with the prosecution of this suit, including attorneys' fees and other costs.

39. Accordingly, pursuant to § 37.09 of the TEXAS CIVIL PRACTICE & REMEDIES CODE and other applicable law, TRG seeks recovery of its attorneys' fees and costs from Defendants.

## VI.
## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that Defendants be cited to appear and answer, and that this Court enter a judgment in Plaintiff's favor and against Defendants, providing for the following relief:

    (a)    Judgment declaring that Defendants Brock and BMPI are the alter egos of BMI and that their collective operations constitute a single business enterprise, and therefore, Brock, BMPI, and BMI are jointly and severally liable for Judgment obtained against BMI in previous action;

(b) Judgment declaring that Defendant Brock used BMI as a corporate sham to perpetrate fraud on Plaintiff and that Brock and BMPI are jointly and severally liable for Judgment obtained against BMI in previous action;

(c) Judgment declaring all transfers from BMI to Brock and BMPI void as to Plaintiff, and setting aside and annulling such transfers;

(d) Judgment declaring that the lien conveyed by the UCC Financing Statement to be set aside;

(e) A declaration subjecting Defendants' property to a lien under Plaintiff's Judgment, and an order that the lien be foreclosed against the property and the property sold to satisfy Plaintiff's Judgment;

(f) Attorneys' fees and costs of suit; and

(g) Such other and further relief to which Plaintiff may be justly entitled.

Dated: April 15, 2008

        Respectfully submitted,

        LACKEY HERSHMAN, L.L.P.


        By: /s/ Scott M. Garelick
           Jamie R. Welton
           State Bar No. 24013732
           Scott M. Garelick
           State Bar No. 24029053

        3102 Oak Lawn Avenue, Suite 777
        Dallas, Texas 75219-4241
        Telephone:(214) 560-2201
        Telecopier:(214) 560-2203

        **ATTORNEYS FOR PLAINTIFF**
        **THE RICHARDS GROUP, INC.**

## CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of the foregoing document to be served via the Electronic Filing System upon the attorney of record identified below on this 15th day of April, 2008.

Geoffrey S. Harper
Fish & Richardson, P.C.
5000 Bank One Center
1717 Main St.
Dallas, TX 75201

/s/ Scott M. Garelick
Scott M. Garelick