UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THE RICHARDS GROUP, INC.,** § | | |
| § | | |
| Plaintiff, § | NO. 3:06-CV-0799-D | |
| § | ECF | |
| vs. § | | |
| § | | |
| **JEFFREY S. BROCK AND BROCK** § | | |
| **MUSIC PRODUCTIONS, INC.,** § | | |
| § | | |
| Defendants. § | | |

## PLAINTIFF'S POST-TRIAL BRIEF

Jamie R. Welton
State Bar No. 24013732
Scott M. Garelick
State Bar No. 24029053
LACKEY HERSHMAN, LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
Telephone: (214) 560-2201
Telecopier: (214) 560-2203

**ATTORNEYS FOR PLAINTIFF
THE RICHARDS GROUP, INC.**

TO THE HONORABLE SIDNEY A. FITZWATER, CHIEF DISTRICT JUDGE:

Pursuant to the Court's instructions at the close of evidence and the Scheduling Order dated June 3, 2008, Plaintiff The Richards Group ("TRG") submits this Post-Trial Brief against Defendants Jeffrey S. Brock ("Brock"), and Brock Music Productions, Inc. ("BMPI"). Unless defined otherwise, capitalized terms used herein have the same meaning as used in the Pretrial Order dated May 28, 2008, and the Stipulation of Uncontested Facts in the Arbitration, dated Nov. 3, 2005 (Pl.Ex. 3). Citations to the trial transcript are regrettably unavailable as of the date of submission.

## OVERVIEW

The evidence presented at trial demonstrated overwhelmingly that Brock exercised complete dominion over Brock Music, Inc. ("BMI") and, rather than honor BMI's contractual obligations to TRG, began deliberately misappropriating BMI's assets for his personal benefit and control. After being put on notice of TRG's claims, the record reflects that Brock, *inter alia*:

(1) began depositing BMI checks into a personal bank account in order to maintain an artificially low balance in BMI's corporate account;

(2) controlled the distribution of BMI's funds from his personal account to selectively pay himself rent and back salary;

(3) caused BMI to convey him a security interest in virtually all of BMI's assets for no consideration approximately 18 days before TRG reduced its Arbitration Award to the Final Judgment and at a time BMI was admittedly insolvent;

(4) formed BMPI approximately 11 days before TRG reduced its Arbitration Award against BMI to the Final Judgment;

(5) operated BMPI with the same recording engineer, office space, equipment, and phone number as BMI, and with a substantially similar name that was virtually identical to the original name of BMI;

(6) conveyed the personal bank account containing BMI funds to BMPI without consideration, and continued to deposit BMI funds directly into the account; and

(7) paid himself from the account conveyed to BMPI for debts allegedly owed to him by BMI.

The record also reflects that through the operation of what Brock called "Creative Caffeine," he, *inter alia*:

(1) rented the Recording Studio leased by BMI to third parties without remuneration to BMI;

(2) permitted the third parties renting the Recording Studio to use BMI's Recording Equipment without remuneration to BMI;

(3) deposited the funds obtained from renting the Recording Studio and use of BMI's Recording Equipment into a personal bank account; and

(4) caused BMI to report the revenue on its federal income taxes and incur the corresponding tax liability.

In addition, the record reflects that Brock, *inter alia*:

(1) was the sole shareholder of BMI and BMPI;

(2) was responsible for the day-to-day operations of BMI and BMPI;

(3) made numerous documented and undocumented "loans" to BMI and BMPI, some with and without interest;

(4) caused BMPI to make numerous undocumented "loans" to BMI without interest; and

(5) caused BMI to become administratively dissolved by the State of Tennessee from 1985-1989, and again from August 2006-December 2007 (and perhaps longer).

In sum, there is overwhelming evidence that Brock, BMI and BMPI, are one operation and that Brock has controlled the use of BMI and BMPI in a manner to deliberately hinder TRG's ability to collect on amounts owed to it. The Court, therefore, should rule that Brock and BMPI are jointly liable for the judgment that TRG obtained against BMI, and that the "lien" Brock filed to encumber all of BMI's assets is null and void.

## ARGUMENT

Under Tennessee law, TRG does not have to meet any heightened burden of pleading, proof, or persuasion. Instead, TRG merely has the burden to show facts demonstrating that the relief it seeks is warranted. *See Nepp v. Hart*, 2006 WL 2582503, at *7 (Tenn. Ct. App. 2006).

TRG recognizes that there is a presumption that a corporation has a distinct legal existence apart from its owners. However, when the company is used as a sham, or where it and another company – or an individual – are in fact identical or indistinguishable from one another, it is appropriate to disregard that legal fiction and hold the owner or a related entity liable for its obligations. *See Pamperin v. Streamline Mfg., Inc.*, 2008 WL 695865, at *6-7 (Tenn. Ct. App. Mar. 17, 2008); *Boles v. Nat'l Dev. Co.*, 175 S.W.3d 226, 244, 245 (Tenn. Ct. App. 2005). This is especially true when the company is liable for a debt but without ability to pay it, and that lack of funds is due to some wrongdoing on the part of that company's owner. *See Pamperin* 2008 WL 695865, at *7. Ultimately, the purpose of piercing the corporate veil is to accomplish justice, and if Brock is permitted to walk away from BMI's obligations arising from his creation of the Composition that caused the Copyright Suit, The Richards Group will be denied justice.

During their Opening Statement, Defendants asserted that Plaintiff's allegations amount to "form over substance." While the evidence belied this assertion, it is important to note that in a case such as this, "form" is crucial. Owners of corporations receive important benefits of their use of the corporate form, particularly its value as a shield against liability for the company's actions. It is wholly unjust, however, for an owner to accept those protections while misusing that "form" to harm innocent third parties. This is why the law permits a plaintiff to pierce the corporate form when that form is not just a legal fiction, but a factual one as well.

In order to pierce that fiction, a plaintiff must establish three elements: (1) the owner exercises complete dominion over the company, not only of its finances but also its business practices, so that the corporate entity has no separate mind, will or existence of its own; (2) that control was used to commit a wrong or a dishonest or unjust act that violates another party's rights; and (3) that control proximately caused the harm, injury or unjust loss. In order to determine whether TRG met its burden to establish the aforementioned elements, Tennessee courts look to the so-called *Allen* factors, taken from the case *Federal Deposit Insurance Corporation v. Allen*, 584 F.Supp. 386 (E.D. Tenn. 1984).

The Court need not find that all of the *Allen* factors exist, or even that a majority of them exist. Indeed, the presence of any one factor has been determined to be sufficient to disregard the corporate form. *See Nepp*, 2006 WL 2582503, at \*6-\*7. The *Allen* factors identified below are all present.

| | |
|---|---|
| Corporation was grossly undercapitalized | • BMI could not fulfill its indemnification obligations at the time it signed the Contract with TRG. |
| | • Once on notice of TRG's claims for indemnification, Brock began to deposit BMI funds into a personal bank account in order to maintain artificially low balances in BMI's corporate account. |
| | • Brock capitalized BMPI with BMI funds in Brock's personal bank account and other undocumented, unidentified, interest free loans from Brock in an undetermined amount. |
| Sole ownership of stock by one individual | • Defendant admitted he was the sole shareholder of BMI and BMPI, was the President and Chairman of each company, and was solely responsible for their day-to-day operations. |

| | |
|---|---|
| Use of same office | - BMI and BMPI both operated from 2937 Berry Hill Dr., a/k/a the Recording Studio.<br>- Both companies had the same phone number.<br>- BMPI utilized facilities leased by BMI, office equipment owned by BMI, and Recording Equipment owned by BMI without remuneration. |
| Employment of same employees and/or attorneys | - Jeff Brock and Joan Brock were the sole officers and directors of BMI and BMPI, and Joan Brock had little or no involvement.<br>- Collin Peterson, the Recording Engineer, is the only other employee of BMI or BMPI; he was paid the same amount for the same services; and did not miss a pay period between the last payment from BMI on 2/28/06 (date of the Final Judgment) and the first payment from BMPI on 3/15/06.<br>- Norm Rollins (lawyer/accountant) represented Brock and BMI for more than a decade; prepared tax returns for Brock and BMI; and incorporated BMPI. |
| Use of the corp. as an instrumentality or business conduit for an individual or another company | - Brock rented the Recording Studio to third parties through a personal business operation he labeled Creative Caffeine, which utilized the Recording Studio leased by BMI, the Recording Equipment owned by BMI, and the utilities and phone services paid by BMI.<br>- No remuneration of any kind was made to BMI from the operation of Creative Caffeine.<br>- Funds derived from the operation of Creative Caffeine were deposited into a personal bank account.<br>- Revenue generated from the operation of Creative Caffeine was reported on BMI's tax returns, as opposed to Brock's tax returns. |

| | |
|---|---|
| Diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another | • After receiving notice of TRG's indemnification claim in 2004, Brock began depositing BMI's funds into a personal account (the #357 Account at NBC/Suntrust) instead of the only BMI corporate account (the #052 Account at Bank of Nashville). |
| | • Admittedly, Brock began depositing BMI's funds into the personal #357 Account in April 2004 after he was advised to do so by D. Berschback — the lawyer handling TRG's indemnification claim — to keep the balance in BMI's corporate account artificially low and away from creditors. |
| | • The checks written to BMI from the #357 Account all say "loan" in the memo line. |
| | • Brock placed a UCC Lien in favor of himself against <u>all</u> BMI's physical assets 18 days before TRG reduced its Arbitration Award to the Final Judgment. |
| | • Brock admitted there was no consideration for the security interest conveyed in the UCC Financing Statement. |
| | • Brock admitted BMI was insolvent at the time he authorized BMI to convey himself a security interest in all of BMI's physical assets. |
| | • Brock's Lease Agreements with BMI contained no right to a security interest or other collateral in the event of default. |
| | • The documented and undocumented "loans" Brock made to BMI contained no right to a security interest or collateral in the event of default. |
| | • BMI's tax returns did not evidence the rent liabilities allegedly owed by BMI to Brock. |
| | • Brock formed BMPI approximately 11 days before TRG reduced its Arbitration Award to the Final Judgment and changed the name on the #357 Account to BMPI. |

| | |
|---|---|
| Continued:<br><br>Diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another | • Brock altered the January 2006 invoice to Black Eyed Pea Restaurants regarding the "Recipe" and "Rockin' Blues" TV/Radio spots to make checks payable to "Brock Musical Productions" as opposed to BMI and deposited the funds remitted directly in the #357 Account with the notation "To BMP, Inc."<br><br>• According to Brock, BMPI never had any clients, customers, or projects, and was never designed to do radio and TV advertising.<br><br>• When presented with prior BMI invoices to Black Eyed Pea restaurants regarding the "Recipe" and "Rockin' Blues" TV/Radio spots (also deposited into the #357 Account), Brock acknowledged that the work performed with respect to the January 2006 invoice was done by BMI.<br><br>• Brock testified in his October 2006 deposition that BMPI was funded by him personally from monies he received for scoring the film "No Regrets" and that he held the monies in a "personal account" at "Suntrust," along with monies received for a "couple of smaller projects;" BMI, not Brock, scored the film "No Regrets" and issued the corresponding invoice; Brock deposited the check to BMI for scoring the film "No Regrets" in the #357 Account.<br><br>• Brock testified in his December 2007 deposition that BMI had only one corporate account from October 2003 thru January 2006 — the #052 Account with Bank of Nashville (and its predecessor account with Bank of America). |
| Use of the corporation as a subterfuge in illegal transactions | • Fraudulent conveyance: Brock liened BMI's assets in favor of himself. |
| Formation and use of the corporation to transfer to it the existing liability of another person or entity | • BMPI's formation post-Arbitration/pre-Final Judgment<br><br>• "Formed for protection" |

| Failure to maintain arms length relationships among the entities | • Inter-company and personal "loans;" some documented, some not; some with interest, some not; some repaid, some not; some from funds in the #357 Account that rightfully belonged in BMI's corporate account. |
| --- | --- |
| | • Alleged rent liabilities in excess of $200,000 not identified on BMI tax returns. |
| | • BMI's conveyance of a security interest to Brock on all of BMI's physical assets without consideration and while BMI is insolvent. |
| | • BMI administratively dissolved from 1985-89, although Brock actively maintained its business operations. |
| | • BMI administratively dissolved again from August 2006 to December 2007, although Brock actively maintained its business operations (Brock presented no evidence to support his claim that he reinstated BMI after his December 2007 deposition). |
| | • Operation of Creative Caffeine without remuneration to BMI. |

In *Nepp v. Hart*, a Tennessee appellate court focused on the 11th *Allen* factor – failure to maintain arms length relationship between the owner and his company. *See Nepp*, 2006 WL 2582503, at *7. The court focused almost exclusively on the fact that the individual owner of the company co-mingled the company's funds with his personal funds. *Id*. That alone was sufficient to hold the individual owner liable for the company's liabilities. *Id*.

Likewise in *VP Buildings, Inc. v. Polygon Group, Inc., et al.*, the owner of company made "personal loans" to the company. *VP Buildings, Inc. v. Polygon Group, Inc., et al.*, 2002 WL 15634, at *5-*7 (Tenn. Ct. App. 2002). Then, the owner encumbered the company's only asset. *Id*. As a result, the court found the owner liable for the company's debts. *Id*. The court stated that it would be unfair to allow Defendant to hide behind an insolvent company. *Id*.

In *Elec. Power Board of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, the Tennessee Supreme Court disregarded the corporate fiction and found a second company liable for the negligence of another company. *Elec. Power Board of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 527 (Tenn. 1985). The two companies had the same president, and he signed checks for both companies. *Id*. Both companies had employees in common; particularly, an engineer who did the same work for both companies. *Id*. Both companies used the same physical asset, a crane. *Id.* The first company owed the second company on alleged "loans," yet that first company was insolvent. *Id.* Indeed, for the Tennessee Supreme Court this was the key fact: it would be unfair to find only the first insolvent company liable, when both were essentially run and operated by same person, who was seeking to hide behind the insolvent company to avoid its obligations. *Id*.

In *Boles, et al. v. Nat'l Dev. Co.*, plaintiffs filed a class action against a home developer, its corporate owner and the individual who ran both companies. *Boles, et al. v. Nat'l Dev. Co.,* 175 S.W.3d 226, 236-39, 244-50 (Tenn. Ct. App. 2005). Plaintiffs/homeowners sued NDC, the builder, Sunstates, the corporation that owned NDC, and Engle, the individual who ran both companies. *Id*. The Tennessee appellate court found Sunstates and Engle liable for the judgment against NDC. *Id*. Both companies had the same president, and he completely controlled both of them. *Id*. NDC and Sunstates had the same office and phone number. *Id.* NDC transferred cash to Sunstates without invoices explaining the business reason for the transfers. *Id*. Vitally, while a case was pending, NDC transferred its assets to Sunstates in exchange for an unsecured "note." *Id.* Brock, too, took all these actions and it should lead to the same result.

Defendants' counsel mentioned "badges" or "indices" of fraud, and then mentioned fraud at least two other times during Opening Statements. The reason for this is that fraud is a more stringent

element than any of the *Allen* factors. Texas requires fraud to pierce; Tennessee does not. There is no requirement that the party seeking to pierce the corporate veil establish fraud or criminal conduct. *VP Buildings.,* 2002 WL 15634, at *5. Instead, the corporate form may be disregarded when necessary to accomplish justice or when the corporate form is used as a sham. *Id.* Regardless, Plaintiff provided an abundance of evidence that Brock engaged in a series of fraudulent activities after receiving notice that TRG intended to pursue its indemnification claim.

Brock's actions in denuding BMI of its funds and then encumbering its physical assets violated the rights of TRG and prevented it from attaching BMI's assets to satisfy its judgment against BMI, and these actions caused harm to TRG as it left little to nothing from which to satisfy the judgment. Defendants' assertions that TRG could have – and should have – attempted to satisfy its judgment against BMI from what, if any, assets remained unencumbered are meaningless. There is no requirement under Tennessee law that a party must first engage in a futile exercise of executing on a judgment against an apparently defunct company before pursuing its remedies to pierce the corporate form, particularly against a defunct company whose tangible assets have been deliberately encumbered by its owner.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter a judgment in Plaintiff's favor and against Defendants, declaring that defendant Jeff Brock and BMPI are jointly and severally liable with BMI for the Final Judgment, and that the lien placed on BMI's assets by Brock is null and void. Plaintiff also requests such other and further relief to which Plaintiff may be justly entitled.

Dated: June 13, 2008

                    Respectfully submitted,

                    LACKEY HERSHMAN, L.L.P.


                    By: /s/ Jamie R. Welton
                         Jamie R. Welton
                         State Bar No. 24013732
                         Scott M. Garelick
                         State Bar No. 24029053

                    3102 Oak Lawn Avenue
                    Suite 777
                    Dallas, Texas  75219-4241
                    Telephone:  (214) 560-2201
                    Telecopier:  (214) 560-2203

                    **ATTORNEYS FOR PLAINTIFF**
                    **THE RICHARDS GROUP, INC.**

## **CERTIFICATE OF SERVICE**

I certify that I caused a true and correct copy of the foregoing document to be served via the Electronic Filing System upon the attorney of record identified below on this 13th day of June, 2008.

Geoffrey S. Harper
Michael T. Hilgers
Fish & Richardson, P.C.
5000 Bank One Center
1717 Main St.
Dallas, TX 75201

/s/ Jamie R. Welton
Jamie R. Welton